**John J. FONSECA, Plaintiff,**

v.

**COLUMBIA GAS SYSTEMS, INC., New York State Electric & Gas Corp., Olean Medical Group, Travelers Insurance Co., Aetna Life & Casualty Co., Buffalo General Hospital, and New York State Workers' Compensation Board, New York State Department of Labor, Local Union IBEW No. 106, Hornell Local Union IBEW No. 1126, Kenneth S. Apfel, Commissioner of Social Security, Defendants.**

**No. 97–CV–270A.**

United States District Court,
W.D. New York.

Sept. 17, 1998.

John J. Fonseca, Olean, NY, pro se.

Elizabeth Ann Wolford, Wolford & Leclair LLP, Rochester, NY, for defendant Columbia Gas Sysytems, Inc.

James S. Gleason, Hinman, Howard & Kattell, LLP, Binghamtion, NY, for defendant New York Elec. & Gas Corp.

Marylou Kathryn Roshia, Damon & Morey, Buffalo, NY, for defendant Olean Medical Group.

John Wallace, Quackenbush, Cessario & Hamlin, Buffalo, NY, for defendant Travellers Ins. Co.

Cheryl Smith Fisher, Magavern, Magavern & Grimm, Buffalo, NY, for defendant Buffalo General Hosp.

Claire T. O'Keefe, New York State Department of Law, New York, NY, for defendant New York State Workers' Comp. Bd.

Steven A. Segall, NYS Dept. of Law, Labor Bureau, New York, NY, for defendant New York State Dept. of Labor.

John K. Plumb, Beckstrom & Plumb, Jamestown, NY, for defendant Local Union IBEW No. 106.

Cathy Creighton, Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, Buffalo, NY, for defendant Hornell Local Union No. 1126.

Jane B. Wolfe, United States Attorney, Buffalo, NY, for defendant John J. Callahan.

## ORDER

ARCARA, District Judge.

This case was referred to Magistrate Judge Carol E. Heckman pursuant to 28 U.S.C. § 636(b)(1), on April 6, 1998. Defendants filed motions to dismiss, for summary judgment, or for a more definite statement. Defendant Olean Medical Group also filed a motion to set aside entry of default. In addition, defendants New York State Electric & Gas Corp. ("NYSEG"), Hornell Local Union IBEW No. 1126 ("Hornell Local No. 1126"), Columbia Gas Systems, Inc. ("Columbia Gas"), and

Aetna Life Insurance Co. ("Aetna") moved for sanctions against plaintiff under Fed. R.Civ.P. 11.

On August 10, 1998, Magistrate Judge Heckman filed a Decision and Order and Report and Recommendation which: (1) recommended that defendants' motions to dismiss be granted on grounds of res judicata, a prior release, sovereign immunity and Eleventh Amendment immunity, and that the complaint be dismissed as to all defendants; (2) denied defendants' motion for a more definite statement as moot; (3) granted defendant Olean Medical Group's motion to set aside entry of default; and (4) denied the motion for sanctions against plaintiff.

On August 24, 1998, defendant NYSEG filed objections to the Magistrate's Decision and Order and Report and Recommendation, arguing that the Magistrate Judge erred: (1) in not imposing sanctions against plaintiff under Fed.R.Civ.P. 11; and (2) in concluding that the complaint was timely filed. Defendants Columbia Gas, Aetna, and Hornell Local No. 1126 joined in NYSEG's objections via letters.

On August 25, 1998, plaintiff filed objections to the Magistrate Judge's Decision and Order and Report and Recommendation. Defendants Local Union IBEW 106, Commissioner of Social Security and Olean Medical Group filed replies to plaintiff's objections.

## A. *Objections to Decision and Order*

Defendants NYSEG, Columbia Gas, Aetna and Hornell Local No. 1126 object to the Magistrate Judge's Decision and Order denying their motion for sanctions. Pursuant to 28 U.S.C. § 636(b)(1)(A), this Court may reverse the Magistrate Judge's determination on a non-dispositive motion, such as a motion for sanctions, only if "it has been shown that the magistrate's order is clearly erroneous or contrary to law." *Id.* The Court has carefully reviewed the submissions of the parties and Magistrate Judge Heckman's Decision and Order, and finds that it is neither clearly

erroneous nor contrary to law. Accordingly, the Court denies defendants' objections to the denial of their motion for sanctions.

The Court certainly understands the frustration of the defendants, but under the facts and circumstances present here, sanctions are not warranted at this time. Nevertheless, the Court warns plaintiff that if he files any future actions against these same defendants and such actions assert those same claims that have been dismissed in this case and/or in previous cases, he may be subject to monetary and equitable sanctions under Fed.R.Civ.P. 11.

It is not clear from plaintiff's papers whether he is objecting to that portion of the Magistrate Judge's Decision and Order granting defendant Olean Medical Group's motion to set aside entry of default. If he is objecting to that part of the Decision and Order, his objection is denied as the Magistrate Judge's Order is neither clearly erroneous nor contrary to law.

## B. *Objections to Report and Recommendation*

Plaintiff objects to the Magistrate Judge's recommendation that the Court grant defendants' motions to dismiss the case. Although plaintiff's objections are rather lengthy, rambling and difficult to understand, he appears to be simply rehashing arguments that he has already made many times before.

Defendants NYSEG, Columbia Gas, Aetna, and Hornell Local No. 1126 object to that portion of the Report and Recommendation where the Magistrate Judge concluded that the complaint was timely filed.

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made. Upon a *de novo* review of the Report and Recommendation, and after reviewing the submissions of the parties, the Court adopts the Magistrate Judge's

findings that the case should be dismissed on grounds of res judicata, a prior release, sovereign immunity and Eleventh Amendment immunity. The Court does not adopt, however, the Magistrate Judge's finding that the action was timely filed. The Court need not decide that issue in light of its adoption of the remainder of the Report and Recommendation.

Accordingly, for the reasons set forth in Magistrate Judge Heckman's Report and Recommendation, defendants' motions to dismiss or for summary judgment are granted and the complaint dismissed as to all defendants.[1] The Clerk of Court is hereby ordered to enter judgment in favor of the defendants and take all steps necessary to close the case.

IT IS SO ORDERED.

### DECISION AND ORDER AND REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

This matter was referred to the undersigned by the Hon. Richard J. Arcara for all pretrial matters and to hear and report on dispositive motions, in accordance with 28 U.S.C. § 636(b). Defendants have filed motions to dismiss, for summary judgment, or for a more definite statement. Defendant Olean Medical Group has also filed a motion to set aside entry of default, and defendant New York State Electric & Gas ("NYSEG") has filed a motion for sanctions against plaintiff. For the reasons that follow, it is recommended that defendants' motions to dismiss or for summary judgment be granted. Defendant Olean Medical Group's motion to set aside entry of default is granted. Defendant NYSEG's motion for sanctions is denied.

1. On August 25, 1998, along with his objections to the Magistrate Judge's Decision and Order and Report and Recommendation, plaintiff filed a motion for a new trial under Fed.R.Civ.P. 59 or, in the alternative, for re-

### BACKGROUND

On April 10, 1997, plaintiff filed the complaint *pro se* in this action alleging a conspiracy to violate his civil rights and to deny him long-term disability benefits (Item 1). He also lists five previous lawsuits in state and federal court dealing with the same facts involved in this action, as follows:

1. *Fonseca v. Columbia Gas of New York,* 82–CV–992M (W.D.N.Y).

In October, 1982, plaintiff brought an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* against his employer, Columbia Gas of New York, Inc. He alleged that Columbia Gas discriminated against him on the basis of his national origin because he was being paid a lower wage at his position of job operations clerk than his predecessor had been paid (*see* Item 34, Ex. A). On September 13, 1983, a non-jury trial was held before United States Magistrate Judge Edmund F. Maxwell, on consent of the parties pursuant to 28 U.S.C. § 636(c). Judge Maxwell found that the previous job operations clerk maintained a higher rate of pay based on his years of service, and found no evidence that the difference in compensation was otherwise discriminatory (*id.,* Ex. B). On October 14, 1983, Judge Maxwell entered an order dismissing the complaint and entering judgment in favor of Columbia Gas (*id.*). Plaintiff appealed, and on August 31, 1984, the Second Circuit affirmed the judgment without opinion. *Fonseca v. Columbia Gas of New York, Inc.,* 751 F.2d 368 (2d Cir.1984).

2. *Fonseca v. Columbia Gas of N.Y., Inc.,* 90–CV–1034A (W.D.N.Y.).

On October 2, 1990, plaintiff again sued Columbia Gas[1] under Title VII alleging

lief from judgment under Fed.R.Civ.P. 60. That motion is hereby denied in all respects.

1. Columbia Gas of New York, Inc. was acquired by New York State Electric and Gas

employment discrimination based on national origin. He claimed that, in retaliation for filing his earlier lawsuit, Columbia Gas failed to promote him, withheld information about job opportunities, and delayed his long-term disability benefits relative to a work-related injury which he suffered in October, 1986 (*see* Item 34, Exs. C, D). On February 8, 1994, Judge Arcara issued a decision and order dismissing plaintiff's Title VII claim as untimely, and allowing plaintiff the opportunity to amend his complaint to assert a claim under the Civil Rights Act of 1991, 42 U.S.C. § 1981, for discriminatory denial of promotion (*id.*, Ex. F). In October, 1994, plaintiff entered a "Full Release and Settlement Agreement" with Columbia Gas, settling the case (*see* Item 51, Ex. A).[2] On October 7, 1994, Judge Arcara issued an order dismissing the action with prejudice and without costs, based on the confidential settlement agreement (Item 34, Ex. E).

3. *In the Matter of the Claim of John J. Fonseca*, 201 A.D.2d 818, 607 N.Y.S.2d 195 (3rd Dep't 1994).

On September 21, 1992, plaintiff filed an appeal from a decision of the Unemployment Insurance Appeal Board, which ruled that plaintiff was disqualified from receiving unemployment insurance benefits because he voluntarily left his employment without good cause. On February 10, 1994, the Appellate Division of New York State Supreme Court, Third Department, affirmed the Board's ruling, holding as follows:

The record contains substantial evidence to support the conclusion that [plaintiff] left his employment voluntarily and without good cause. Although [plaintiff] contended that he could not perform his duties because of medical restrictions, the evidence revealed that the employer was willing to accept the limitations imposed by [plaintiff]'s physician and to let [plaintiff] continue his employment. [Plaintiff], however, chose to resign. Consequently, the decision that personal and noncompelling reasons caused [plaintiff] to leave his employment while work was still available should not be disturbed.

*In the Matter of the Claim of John J. Fonseca, supra.*

4. *Fonseca v. New York State Electric & Gas, et al.*, 94–CV–339A(H) (W.D.N.Y.).

On May 6, 1994, plaintiff filed an action in this court against New York State Electric & Gas Corporation ("NYSEG"), Hornell Local No. 1126 of the International Brotherhood of Electrical Workers ("Hornell Local No. 1126"), and the New York State Department of Labor for employment discrimination under 42 U.S.C. § 1981. He claimed that NYSEG intentionally forced him to resign in January, 1992 because of his color and national origin, and that Local No. 1126 discriminated against him by failing to represent him at meetings with NYSEG personnel in October, 1991 and January, 1992. In a decision and order dated December 7, 1994, Judge Arcara dismissed the claims against the Department of Labor for denial of unemployment insurance benefits, finding those claims barred by principles of collateral estoppel/*res judicata* and eleventh amendment immunity. On August 15, 1995, this court issued a "Decision and Order and Report and Recommendation" in 94–CV–339A(H), recommending dismissal of the case for failure to make out a *prima facie* case of employment discrimination, and de-

Corporation ("NYSEG") on April 5, 1991 (Item 34, ¶ 3).

**2.** On September 22, 1997, Magistrate Judge Hugh Scott issued an order in this case directing counsel for Columbia Gas to provide the court and all parties with a copy of the "Full Release and Settlement Agreement," with the express order that the agreement would remain confidential (Item 49). A copy of the agreement is attached as Exhibit A to the "Reply Affidavit" of Elizabeth Wolford, counsel for Columbia Gas (Item 51).

nying plaintiff's request for leave to amend the complaint to add a claim for discriminatory discharge under the Employee Retirement Income Security Act ("ERISA"). On June 12, 1996, Judge Arcara adopted this court's Decision and Order and Report and Recommendation in its entirety, and the case was dismissed. Plaintiff did not appeal.

5. *Fonseca v. Chater,* 95–CV–826A(H) (W.D.N.Y.).

On September 25, 1995, plaintiff brought an action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Commissioner of Social Security's decision that plaintiff was entitled to disability insurance benefits as of February 20, 1993, but not earlier. Plaintiff alleged that the Commissioner's determination of his disability onset date was based upon an incomplete and inaccurate record. He sought to admit "new and material" evidence concerning his pre–1993 high blood pressure treatment, and to reopen two prior applications for Social Security disability insurance benefits. On November 13, 1996, this court issued a Report and Recommendation, recommending that the Commissioner's decision be upheld. The court found that the disability onset date was based upon substantial evidence, that the additional evidence presented by plaintiff was neither "new" nor "material," and that the request to reopen the prior applications lacked good cause. On January 3, 1997, Judge Arcara adopted the Report and Recommendation. *Fonseca v. Chater,* 953 F.Supp. 467 (W.D.N.Y.1997). Plaintiff appealed, and on February 25, 1998, the Second Circuit affirmed. *Fonseca v. Chater,* 141 F.3d 1151, 1998 WL 88037 (2d Cir. 1998).

In the complaint in this action, plaintiff claims that Columbia Gas,[3] NYSEG, the Commissioner of Social Security, the New York State Department of Labor and Workers Compensation Board, Local Union No. 106 and Hornell Local No. 1126 of the International Brotherhood of Electrical Workers, the Travelers Insurance Company (workers compensation insurance carrier for Columbia Gas/NYSEG), Aetna Life Insurance Company (long-term disability insurance carrier for Columbia Gas/NYSEG), Olean Medical Group and Buffalo General Hospital (where physicians who treated or examined plaintiff practiced) conspired to defraud plaintiff and to deny him eligibility for disability insurance benefits, in violation of his "civil and constitutional rights" under 42 U.S.C. § 1981 and "several provisions of [ERISA]" (Item 1, p. 10).

Hornell Local Union 1126 initially moved to dismiss the complaint on the grounds that it is barred by the principles of *res judicata,* collateral estoppel, and the statute of limitations, and that the complaint fails to allege federal claims under ERISA or § 1981 (*see* Item 10). Hornell Local Union 1126 also seeks an order pursuant to Rule 11 of the Federal Rules of Civil Procedure requiring plaintiff to obtain court approval prior to filing any further claims relating to the facts of this case, and for monetary sanctions (*id.*). NYSEG moves to dismiss on these same grounds (*see* Item 10), and seeks similar relief under Rule 11 (*see* Item 40).

All defendants [4] have followed suit by moving to dismiss on *res judicata,* collateral estoppel and statute of limitations grounds, and most have asserted additional grounds for dismissal. For example, Columbia Gas and Aetna Life Insurance Company jointly move to dismiss the complaint on the ground of release based on the October 4, 1994 settlement agreement

---

**3.** According to the Wolford affidavit, plaintiff has incorrectly identified both The Columbia Gas System and Aetna Life Insurance Company (*see* Item 32).

**4.** Local Union IBEW No. 106 (Item 17) and Buffalo General Hospital (Item 37) have moved only for a more definite statement. However, as the discussion *infra* demonstrates, the claims against these defendants should be dismissed *sua sponte.*

in 90–CV–1034A (*see* Item 33). The Commissioner of Social Security moves to dismiss for lack of subject matter jurisdiction based on sovereign immunity (*see* Item 43). The New York State Department of Labor moves to dismiss on the ground that the action is barred by the Eleventh Amendment (*see* Item 15). The New York State Workers Compensation Board also moves to dismiss on the grounds of state sovereign immunity under the Eleventh Amendment, the doctrine of abstention, and lack of subject matter jurisdiction over Workers Compensation Board decisions (*see* Item 45; *see also* Travelers Insurance Company's Memorandum of Law, Item 64; Olean Medical Group's Notice of Motion to Dismiss, Item 62). Olean Medical Group has also moved to set aside the Clerk's entry of default under Fed.R.Civ.P. 55(a).

## DISCUSSION

### I. Res Judicata.

The doctrine of *res judicata*, or "claim preclusion," provides that a final judgment on the merits in one action bars subsequent relitigation of the same claim by the same parties and by those in privity with the parties. *Greenberg v. Board of Governors of the Federal Reserve System*, 968 F.2d 164, 168 (2d Cir.1992); *see also Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 90 (2d Cir.1997); *Yaba v. Roosevelt*, 961 F.Supp. 611 (S.D.N.Y.1997). *Res judicata* applies both to "issues actually decided in determining the claim asserted in the first action and [to] issues that could have been raised in the adjudication of that claim." *N.L.R.B. v. United Technologies Corp.*, 706 F.2d 1254, 1259 (2d Cir.1983); *see also Interoceanica, supra*, 107 F.3d at 90. "It is the identity of the facts surrounding the occurrence which constitutes the cause of action, not the legal theory upon which [the plaintiff] chose to frame her complaint." *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 39 (2d Cir.1992); *see also Interoceanica*, 107 F.3d at 90; *Hernandez v. Cunningham*, 914 F.Supp. 72, 75 (S.D.N.Y.1996).

The determination of "whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *Prime Management Co., Inc. v. Steinegger*, 904 F.2d 811, 815 (2d Cir.1990) (citing *N.L.R.B, supra*, 706 F.2d at 1254); *see also Woods, supra*, 972 F.2d at 36 (subsequent Title VII cause of action barred by prior judgment in case alleging violation of a collective bargaining agreement); *Hernandez, supra*, 914 F.Supp. at 75 (subsequent Title VII action barred by previously adjudicated § 1983 claims). In short, "*res judicata* requires a party to bring in one litigation all its claims arising from a particular transaction." *Brown v. Felsen*, 442 U.S. 127, 132, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); *see also Pentagen Technologies International, Ltd. v. CACI International, Inc.*, 1996 WL 435157, at *7 (S.D.N.Y. Aug.2, 1996). "As articulated by the Supreme Court, application of the doctrine of *res judicata* serves several purposes; it 'relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication.' " *Thompson v. County of Franklin*, 1996 WL 341988, at *3 (N.D.N.Y. June 18, 1996) (quoting *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)).

As the proponents applying the doctrine of *res judicata* in this case, defendants must demonstrate that (1) the court rendered a final judgment on the merits in the prior case, (2) the prior suit involved the same parties or their privies, and (3) plaintiff bases the subsequent suit on the same causes of action. *Usina Costa Pinto S.A. v. Louis Dreyfus Sugar Co.*, 933 F.Supp. 1170, 1175–76 (S.D.N.Y.1996) (citing *NLRB v. United Technologies Corp., supra*, 706 F.2d at 1259; *see also Schenk*

*v. Mine Management Company, Inc.*, 1997 WL 31400, \*2 (N.D.N.Y. January 23, 1997). The Second Circuit has adopted a broad view of what constitutes the same cause of action for *res judicata* purposes. "The requirement of 'identity of cause of action' does not mean that the claims alleged be identical ...." *Meagher v. Bd. of Trustees of Pension Plan*, 921 F.Supp. 161, 167 (S.D.N.Y.1995) (quoting *Cullen v. Paine Webber Group, Inc.*, 689 F.Supp. 269, 278 (S.D.N.Y.1988)), *aff'd*, 79 F.3d 256 (2d Cir. 1996). Instead, the critical inquiry for the court on a motion to dismiss the complaint on *res judicata* grounds is whether the two suits "center on the same transaction or series of transactions, or they arise from a 'single core of operative facts ....'" *Bloomquist v. Brady*, 894 F.Supp. 108, 114 (W.D.N.Y.1995) (quoting *Norman v. Niagara Mohawk Power Corporation*, 873 F.2d 634, 638 (2d Cir.1989)).

■ There can be no question that the facts alleged by plaintiff in the complaint in this action arise from the same operative facts or series of transactions alleged in 90–CV–1034A, 94–CV–339A(H) and 95–CV–826A(H). This court is thoroughly familiar with those allegations, having presided over settlement negotiations, motion practice and other pretrial matters in each of those cases, and having issued a report and recommendation in both 94–CV–339A(H) and 95–CV–826A(H).

In the Report and Recommendation in 94–CV–339A(H), this court set forth the following undisputed facts. In October, 1986, while he was working for Columbia Gas, plaintiff suffered a work-related injury to his right arm. He went on long-term disability until approximately March, 1991.[5] In April, 1991, after Columbia Gas was acquired by NYSEG, plaintiff was contacted by NYSEG supervisor Robert Rossi about interviewing for meter reader/collector or meter installer positions that had recently become available. Mr. Rossi suggested that plaintiff be examined by his doctor before applying for the job with NYSEG in order to determine whether his prior disability would prevent him from performing the exertional demands of either of these positions. Plaintiff was examined by Dr. R.J. Mutty on April 23, 1991. In Dr. Mutty's opinion, based on the examination and the job descriptions provided, plaintiff's disabling condition was not serious enough that it would prevent him from participating in those activities. On May 6, 1991, plaintiff met with Mr. Rossi and two other NYSEG employees. During the interview, plaintiff was offered his choice of either the meter reader or meter installer job. He chose the installer position because it paid more money. After a week of training in Binghamton, plaintiff began working as a meter installer in the Olean area. He joined Hornell Local No. 1126 shortly thereafter.

Under the 1991–1994 collective bargaining agreement between NYSEG and Local No. 1126, effective July 1, 1991, plaintiff's meter installer position was reclassified and upgraded to the position of field service representative. In September of 1991, plaintiff contacted Mr. Edward Dickinson, NYSEG's Human Resource Manager, to inquire as to whether the Occupational Disability Benefits program set forth in General Bulletin No. 3 of the new collective bargaining agreement applied to him. On October 9, 1991, Mr. Dickinson wrote to plaintiff to advise him that General Bulletin No. 3 was determined to be

---

5. Aetna Life Insurance Company was the long term disability insurance carrier for Columbia Gas, under a group disability benefits plan (*see* Item 35, ¶ 1 & Ex. A). According to the affidavit of Richard F. Manville, a Claim Analyst for Aetna, plaintiff began receiving long term disability benefits under the plan on or about April 23, 1987. The benefits were terminated on April 1, 1991, after Aetna received the results of an independent physical examination performed by Dr. Andrew Matteliano on February 22, 1991 (*Id.*, ¶¶ 2–5 & Ex. B). Meanwhile, during his long term disability leave, plaintiff filed 90–CV–1034A, alleging that he was being denied promotional opportunities in retaliation for bringing his previous lawsuit (82–CV–992M).

applicable to his assignment as field service representative. As a result, plaintiff received a supplemental benefit equal to 95% of the difference between the rates of pay for his former job with Columbia Gas and his current assignment with NYSEG, retroactive to his May 6, 1991 starting date.

Also in October, 1991, NYSEG began a statewide program to replace old gas meters in customers' homes with new lightweight meters and outdoor remote meter-reading devices. The meter removal and installation duties were part of the duties set forth in the job specification for the field service representative position. In late October, 1991, plaintiff met with Mr. Dickinson, Mr. Rossi and Robert Langfitt to discuss his concerns about the exertional demands of these proposed duties. Mr. Dickinson set up an appointment with Dr. Mutty to have plaintiff reevaluated. In the meantime, the meter exchange program was delayed in plaintiff's area, and plaintiff continued to perform his basic field representative job duties.

Dr. Mutty examined plaintiff on January 7, 1992. He reported to Mr. Dickinson that plaintiff had done quite well with no exacerbation of his problems since returning to work in May, 1991. However, Dr. Mutty was of the opinion that if plaintiff's work duties were to include lifting ironcase meters weighing over 40 pounds and drilling through concrete and masonry, his problems would again become exacerbated. Dr. Mutty therefore restricted plaintiff from performing such duties.

Upon receipt of Dr. Mutty's report, Mr. Dickinson scheduled a meeting with plaintiff, which took place on January 14, 1992. At the meeting, Mr. Dickinson explained to plaintiff that, in the opinion of Dr. Mutty, plaintiff could not perform the exertional demands of the field service representative job but could perform the duties of the meter reader/collector job. Mr. Dickinson advised plaintiff that a meter reader/collector position was available in the Olean area, and that NYSEG would reassign him to that position under General Bulletin No. 3, without a decrease in pay.

Plaintiff refused reassignment. Instead, he immediately signed and submitted a hand-written letter stating his intention to resign from his employment with NYSEG, effective January 14, 1992, for medical reasons. During an exit interview with plaintiff, Mr. Dickinson explained the consequences of resignation, including termination of benefits, and gave plaintiff the option of consulting another physician for another opinion. Plaintiff stated that he had given the matter serious consideration, and had decided to resign. He signed the exit interview form.

On May 4, 1993, plaintiff filed an application with the Social Security Administration for a period of disability and disability insurance benefits, alleging disability since January 14, 1992 because of high blood pressure and internal bleeding (Item 14, Ex. A). After initial denial of this claim, a hearing was held in Olean on October 26, 1994 before Administrative Law Judge ("ALJ") James E. Dombeck. In his decision dated November 3, 1994, ALJ Dombeck found that plaintiff had established disability within the meaning of the Social Security Act as of February 20, 1993, but not before, based on severe hypertension, vertigo, hearing loss, and status post cerebral ventrical hemorrhage and right epicondylitis (*id.*).

In his complaint in 94–CV–339A(H), filed *pro se* on May 6, 1994, plaintiff claimed that NYSEG discriminated against him because of his color and Puerto Rican national origin by offering him jobs they knew he was physically unable to perform, thereby forcing him to resign in January, 1992. He also claimed that Hornell Local No. 1126 discriminated against him by failing to represent him at the October, 1991 and January, 1992 meetings with NYSEG personnel, and that the DOL wrongfully denied him unemployment insurance benefits. On December 7, 1994, Judge Arcara granted the DOL's motion to dismiss the

complaint on *res judicata* and collateral estoppel grounds, according full faith and credit to the Appellate Division's determination in *In the Matter of the Claim of John J. Fonseca, supra,* that plaintiff was not entitled to unemployment insurance benefits because he voluntarily left his employment without good cause. Judge Arcara also found that the claims against the DOL were barred by the Eleventh Amendment (*see* Item 14, Ex. C). Plaintiff subsequently moved to amend his complaint to add claims for violation of several provisions of ERISA and to allege that the collective bargaining agreement between NYSEG and Hornell Local No. 1126 discriminated against him based on his national origin, in violation of 42 U.S.C. § 1981.

As discussed above, on August 15, 1995, this court recommended that the summary judgment motions filed by NYSEG and Hornell Local No. 1126 be granted. The court found that the undisputed facts showed that plaintiff was not physically qualified for the meter exchange duties required of the field service representative position he claimed he was forced out of, that he was not discharged by NYSEG but instead intentionally resigned, and that the resignation did not occur under circumstances giving rise to an inference of racial discrimination. The court also recommended dismissal of plaintiff's claims against Hornell Local No. 1126 based on plaintiff's failure to request union representation at any of the meetings he had with NYSEG personnel, failure to bring his breach of duty of fair representation claim within six months from the time when he knew or should have known that the breach had occurred, and failure to exhaust the grievance procedures set forth in the collective bargaining agreement between NYSEG and IBEW. The court also denied plaintiff's motion to amend, finding that it would be futile to allow plaintiff leave to amend his complaint to assert claims against Hornell Local No. 1126 under ERISA or § 1981, since no rational jury could find that he was discharged from his job under circumstances giving rise to an inference of discrimination. On June 12, 1996, Judge Arcara adopted this court's Decision and Order and Report and Recommendation in its entirety, the case was dismissed, and plaintiff did not appeal.

In 95–CV–826A(H), plaintiff claimed that the Social Security Administration's determination that he was eligible for disability insurance benefits as of February 20, 1993, but not prior to that date, was in error because the Commissioner did not consider the evidence of plaintiff's severe hypertension in combination with the evidence of his other disabilities. He sought to introduce additional records to substantiate his claim of an earlier disability onset date. He also claimed that his employers, their workers compensation and disability insurance carriers (Travelers and Aetna), the State of New York and the New York State Labor Board, IBEW Locals 106 and 1126, and the Commissioner of Social Security conspired to defraud him out of his long-term disability benefits (*see, e.g.,* 95–CV–826A(H), Item 13, p. 3). As discussed above, on November 13, 1996, after review of the administrative record and the voluminous documentation submitted as additional evidence, and after hearing oral argument, this court found substantial evidence to support the Commissioner's determination that plaintiff was capable of performing light work prior to his hospitalization for a stroke on February 20, 1993. The court also found that the additional evidence submitted by plaintiff would not have influenced the Commissioner's determination of the onset date, and that plaintiff was not entitled to a reopening of two previous applications. Finally, the court found plaintiff's allegations of fraud and conspiracy to be unsubstantiated. Based on these findings, the court recommended dismissal of plaintiff's complaint. On January 3, 1997, Judge Arcara adopted the court's recommendation, and plaintiff appealed.

On February 25, 1998, the Second Circuit affirmed the dismissal of the complaint, specifically finding as follows:

None of the evidence in the record suggested that Fonseca was disabled at any date earlier than February 20, 1993. The Commissioner's determination of the disability onset date was based on substantial evidence. Although Dr. Mutty reported that Fonseca was impaired to some degree, he did not opine that Fonseca was disabled during the disputed period. Dr. Dubin expressed no opinion as to whether Fonseca's high blood pressure was disabling. Moreover, Fonseca himself testified at his 1993 hearing that he sought no treatment for high blood pressure between 1989 and 1993 and that he was employed within his restrictions between 1991 and 1992. Fonseca introduced no medical evidence to show he could not work up until 1993. Fonseca's "newly discovered" evidence thus fails to meet the "materiality" requirement.

Finally, Fonseca's claims of fraud, conspiracy, judicial bias, and violations of his constitutional rights are unsubstantiated and therefore insufficient to justify reversal of the district court's decision.

*Fonseca v. Chater, supra,* 1998 WL 88037, at *2.[6]

On April 10, 1997, while his appeal of 95–CV–826A(H) was still pending, plaintiff filed his *pro se* complaint in this case. He alleges that he became totally disabled on March 20, 1987 (when he underwent surgery on his arm, and his hypertension problem was first discovered), but that his "Employers, Doctors, their Medical Groups, Insurance Companies, the State and most important the Federal Government" conspired to deny him workers compensation, long-term disability insurance benefits, Social Security disability insurance benefits, and pension benefits. He alleges that he "can now make a medically supported claim that he may have been suffering from a [hypertension] impairment when he submitted his prior [Social Security disability insurance benefits] applications," and states that he "will now turn over these important medical documents to question (Federal), in this new action, the Judgment in this case 95–CV–0826A(H), or challenge the integrity of Judgment, known as '*COLLATERAL ATTACK*,' by introducing now, rather than later, and they will be appended to [the complaint] and listed as *Exhibits* ... "(Item 1, p. 6).[7]

These allegations involve the same series of transactions as the allegations in 90–CV–1034A, 94–CV–339A(H), and especially 95–CV–826A(H). The same essential facts presented in support of plaintiff's "conspiracy" claims were present, at least by degree, in each prior case. In order to prove his conspiracy allegations, plaintiff would have to rely on the same evidence which he relied on in support of his retaliation claims in 90–CV–1034A and his discrimination and breach of representation claims in 94–CV–339A(H), and which he relied on or sought to introduce in support of his challenge to the Social Security Administration's determination of his onset date in

---

**6.** In accordance with Second Circuit Rule 0.23, the summary order of affirmance contained the following Notice:

THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.

As discussed in the text, the Second Circuit's holding in *Fonseca v. Chater,* 141 F.3d 1151, 141 F.3d 1151 (2d Cir.1998), is referred to herein for *res judicata* purposes.

**7.** Plaintiff has attached as Exhibits A–E to his complaint copies of two letters dated March 6, 1997, and June 3, 1997, from the New York State Department of Social Services, Office of Disability Determinations, to "Dr. Dubin Olean Medical Group," along with two consent forms signed by plaintiff, requesting medical information about plaintiff's Social Security disability insurance benefits claim.

95–CV–826A(H). This court has already reviewed the voluminous documentation submitted in support of plaintiff's claims in each of those cases, and found no evidence of *prima facie* employment discrimination (under either Title VII, § 1981, or ERISA) by plaintiff's employers, breach of collective bargaining duties by plaintiff's unions, or conspiracy to deny disability benefits by any of the defendants named in the complaint in this case.

In addition, upon review of the record on appeal in 95–CV–826A(H), the Second Circuit likewise found no evidence to substantiate plaintiff's claims of fraud, conspiracy, judicial bias, and constitutional violations. In short, by way of 90–CV–1034A, 94–CV–339A(H) and 95–CV–826A(H), plaintiff has had at least three prior opportunities to present to this court all of the claims arising from the same series of transactions and events which he seeks to litigate again in this case. Clearly, application of the doctrine of *res judicata* here would serve each of the purposes articulated by the Supreme Court in *Allen v. McCurry, supra*, 449 U.S. at 94, 101 S.Ct. 411: "[to] relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication."

▄▄▄ Finally, while several of the defendants named in the complaint in this action were not literally named as defendants in plaintiff's previous suits, sufficient indicia of privity exist to require application of *res judicata* as to all defendants. Generally, "one whose interests were adequately represented by another vested with the authority of representation is bound by the judgment, although not formally a party to the litigation." *Expert Elec., Inc. v. Levine*, 554 F.2d 1227, 1233 (2d Cir.), *cert. denied*, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977); *see also Meagher v. Bd. of Trustees of Pension Plan, supra*, 921 F.Supp. at 166. "[T]he issue is one of substance rather than the names in the caption of the case … [and]

the inquiry is not limited to a traditional privity analysis." *Alpert's Newspaper Delivery, Inc. v. The New York Times Co.*, 876 F.2d 266, 270 (2d Cir.1989). A finding of privity represents a legal conclusion that the relationship between parties is sufficiently close so as to warrant claim preclusion. *Local 363 v. New York State Dept. of Labor*, 842 F.Supp. 1561, 1566 (S.D.N.Y.1994); *see also Index Fund, Inc. v. Hagopian*, 677 F.Supp. 710, 715 (S.D.N.Y.1987)).

Using this approach to determine "privity" of parties for *res judicata* purposes, a number of courts in the Second Circuit have found that alleged co-conspirators can be bound by the judgment in a prior case despite the fact that those parties were not previously named as defendants. *See, e.g., In re Teltronics Services*, 762 F.2d 185, 192 (2d Cir.1985) (newly-added defendant "was alleged to be a co-conspirator in the second Southern District action filed against the [other] defendants, and is entitled to the *res judicata* effect of that decision"); *Somerville House Management, Ltd. v. Arts & Entertainment Television Network*, 1993 WL 138736, at *3 (S.D.N.Y. April 28, 1993) (where newly-added defendants were alleged to have been major participants in single conspiracy to defraud, and plaintiff conceded that it could have included those parties in earlier action, sufficiently close relationship existed between alleged co-conspirators to preclude second, separate action); *Whitfield v. Carew*, 1990 WL 72621, at *2 (E.D.N.Y. May 15, 1990) (plaintiff's claims against newly-added defendants barred by *res judicata*); *Hazzard v. Weinberger*, 382 F.Supp. 225, 227 (S.D.N.Y.1974) (claims against newly-added defendants for conspiracy to violate plaintiff's civil rights barred by *res judicata*); *Ruskay v. Jensen*, 342 F.Supp. 264, 270 (S.D.N.Y.1972) (sufficient relationship existed between alleged co-conspirators to permit newly-added defendants to assert *res judicata* defense), *aff'd*, 552 F.2d 392 (2d Cir.), *cert. denied*, 434 U.S. 911, 98 S.Ct. 312, 54

L.Ed.2d 197 (1977). Courts in other circuits have made similar findings. *See, e.g.,* *McLaughlin v. Bradlee,* 599 F.Supp. 839, 847–48 (D.D.C.1984) (where multiple suits allege single conspiracy, defendants may "defensively assert claim preclusion against [plaintiff] even though none of the prior suits named all six of them as defendants"), *aff'd,* 803 F.2d 1197 (D.C.Cir. 1986); *Gambocz v. Yelencsics,* 468 F.2d 837, 842 (3d Cir.1972) (relationship of alleged co-conspirators in second complaint was "so close to parties to the first" that second action was barred).

Here, plaintiff named Columbia Gas as the defendant in 90–CV–1034A, and identified Travelers and Aetna as having "committed various acts of wrongdoing" by interfering with his long term disability benefits (Item 34, Ex. C, pp. 5–6). He named NYSEG, Hornell Local No. 1126 and the DOL as defendants in 94–CV–339A(H). He named the Commissioner of Social Security as the defendant in 95–CV–826A(H), and also identified the Olean Medical Group, Travelers, Aetna, the New York State Labor Board, the State of New York, Local Union No. 106, and Columbia Gas as participants in the alleged conspiracy to deny disability benefits (*see, e.g.,* 95–CV–826A(H), Item 13, p. 3). He now seeks to add the New York State Workers Compensation Board and Buffalo General Hospital[8] to the list of alleged conspirators. Under these circumstances, where the defendants are alleged to have been participants in a single conspiracy to defraud plaintiff, where plaintiff had a prior opportunity to raise all claims related to the disputed series of transactions, and where plaintiff in fact concedes in his pleadings that this action is nothing more than an attempt to "collaterally attack" the judgment in 95–CV–826A(H) (*see* Item 1, p. 6), I find that a sufficiently close relationship existed between the alleged co-conspirators to preclude plaintiff from proceeding against any of them in this subsequent, separate action.

For these reasons, it is recommended that all of the defendants' motions to dismiss be granted on the basis of *res judicata.*

## II. Statute of Limitations.

Plaintiff asserts causes of action under 42 U.S.C. § 1981 and "several provisions of [ERISA]" (Item 1, p. 10). Defendants move to dismiss the complaint on the ground that plaintiff's claims under either § 1981 or ERISA are barred by the applicable statutes of limitations.

The Second Circuit recently held that claims brought under ERISA alleging wrongful termination to prevent vesting in an employee benefits plan, which have no specific limitations period under the ERISA statute, are governed by New York's 2–year statute of limitations for actions to redress wrongful termination in connection with collection of workers' compensation benefits. *Sandberg v. KPMG Peat Marwick, LLP,* 111 F.3d 331, 336 (2d Cir.1997). Claims under 42 U.S.C. § 1981 are governed by New York's three-year statute of limitations applicable to personal injury claims. *Tadros v. Coleman,* 898 F.2d 10, 12 (2d Cir.1990). Claims under either § 1981 or ERISA accrue, and the statute of limitations begins to run, once the allegedly discriminatory termination decision has been made and the employee receives notice of the decision. *Tadros v. Coleman, supra; see also Tolle v. Carroll Touch, Inc.,* 977 F.2d 1129, 1140 (7th Cir. 1992). Claims for conspiracy to violate the antidiscriminatory provisions of § 1981 and ERISA accrue when the plaintiff should reasonably have become aware of

---

**8.** Although the allegations in the complaint are not specific with respect to Buffalo General Hospital's participation in the alleged conspiracy, plaintiff has listed Dr. Matteliano (who performed the independent physical examination of plaintiff on February 22, 1991 upon which Aetna based its decision to terminate plaintiff's long-term disability benefits (*see* note 5, *infra* )), under his designation of Buffalo General Hospital as "Fact 12 Defendant" (Item 1, p. 25).

the conspiracy. *See, E.g., Cruden v. Bank of New York,* 1990 WL 131350, at *16 (S.D.N.Y. September 4, 1990).

In this case, construing the allegations in the complaint liberally and drawing all reasonable inferences in favor of plaintiff, *see, e.g., Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989), I find that plaintiff should reasonably have become aware of the alleged conspiracy at least by September 5, 1995, the date on which the Commissioner of Social Security's disability determination became final. This action was filed on April 10, 1997, timely under the applicable statutes of limitations.

Accordingly, defendants' motions to dismiss should not be granted on the ground that the complaint is untimely.

III. Release.

■ Columbia Gas moves to dismiss the complaint against it on the ground that, on October 4, 1994, plaintiff signed a "Full Release and Settlement Agreement" in satisfaction of his claims against Columbia Gas in 90–CV–1034A,[9] by which plaintiff fully and completely released Columbia Gas from any and all actions and claims arising from events occurring prior to the date the agreement was signed. Plaintiff does not dispute that he signed the agreement. However, he claims that the agreement "is null and void due to Fraud (Defrauded) and CONCEALMENT, ALTERING of Medical Documents" (Item 1, p. 27).

■ In general, a release which has been procured through fraud, misrepresentation, or deceit is not a bar to subsequent actions by the party executing the release. *See Scala v. Sequor Group, Inc.,* 1995 WL 225625, at *5 (S.D.N.Y. April 14, 1995); *Barrett v. United States,* 622 F.Supp. 574, 584 (S.D.N.Y.1985), *aff'd,* 798 F.2d 565 (2d Cir.1986). However, where the agreement containing the release expressly states that the releasor disclaims the existence of or reliance upon specified representations, that party will not be allowed to claim that he was defrauded into entering the contract in reliance on those representations. *Manufacturers Hanover Trust Company v. Yanakas,* 7 F.3d 310, 315 (2d Cir.1993); *Citibank v. Plapinger,* 66 N.Y.2d 90, 94–95, 495 N.Y.S.2d 309, 485 N.E.2d 974 (1985); *Danann Realty Corp. v. Harris,* 5 N.Y.2d 317, 320–21, 184 N.Y.S.2d 599, 157 N.E.2d 597 (1959). In order to be considered sufficiently specific to bar a later claim for fraudulent inducement, the agreement must contain explicit disclaimers of the particular representations that form the basis of the fraud claim. *Manufacturers Hanover, supra,* 7 F.3d at 316; *see also Grumman Allied Industries, Inc. v. Rohr Industries, Inc.,* 748 F.2d 729 (2d Cir.1984).

In this case, the October 4, 1994 agreement compromising plaintiff's claims in 90–CV–1034A contained the following language:

> Plaintiff expressly warrants that in making this settlement he has received the benefit of advice of counsel of his own choosing, and no promise or representation of any kind or character has been made by any of the parties released or by anyone acting on their behalf, except as is expressly stated in this instrument.

(Item 51, Ex. A, p. 4). This is precisely the kind of language found by the courts in the cases cited above to be sufficient to bar a releasor's claim of fraudulent inducement. It expressly disclaims any representations upon which plaintiff could rely in order to succeed on his claim that the broad release in the agreement to settle 90–CV–1034A should now be found void due to fraud, concealment, or altering of documents by anyone at Columbia Gas.

---

**9.** It is noted that, upon referral from Judge Arcara, this court presided over the settlement negotiations in 90–CV–1034A which resulted in the signing of the October 4, 1994 agreement. On October 7, 1994, pursuant to the terms of that agreement, Judge Arcara signed an order dismissing 90–CV–1034 with prejudice.

■ In addition, Rule 9(b) of the Federal Rules of Civil Procedure requires that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The particularity requirement of Rule 9(b) is designed to further three goals: (1) to provide a defendant with fair notice of the plaintiff's claim, (2) to protect a defendant from harm to his or her reputation or goodwill, and (3) to reduce the number of strike suits. *Cosmas v. Hassett, supra,* 886 F.2d at 11; *Stern v. Leucadia Nat'l Corp.,* 844 F.2d 997, 1003 (2d Cir.), *cert. denied,* 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988).

■ To satisfy the particularity requirement of Rule 9(b), a complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements. *Cosmas v. Hassett, supra; Goldman v. Belden,* 754 F.2d 1059, 1069–70 (2d Cir.1985). On a motion to dismiss, a court must read the complaint generously, and draw all inferences in favor of the pleader. *Cosmas, supra; see Yoder v. Orthomolecular Nutrition Inst., Inc.,* 751 F.2d 555, 562 (2d Cir.1985).

Giving the complaint a most generous reading, I find that it falls woefully short of Rule 9(b)'s particularity requirement. Despite more than fifteen pages of allegations, plaintiff does not set forth any specific information upon which a reasonable inference may be drawn that anyone at Columbia Gas fraudulently induced plaintiff to settle his claims in 90–CV–1034A, or to release Columbia Gas from liability for all claims arising out of events prior to October 4, 1994.

Accordingly, the motion of Columbia Gas to dismiss the complaint should be granted on the basis of the release contained in the "Full Release and Settlement Agreement" signed by plaintiff on October 4, 1994.

## IV. Sovereign Immunity.

■ The Commissioner of Social Security moves to dismiss the complaint on the ground of sovereign immunity. According to the Commissioner, 42 U.S.C. § 405(g) and (h) provide only a limited waiver of sovereign immunity for judicial review of the Commissioner's final decisions, and plaintiff is otherwise jurisdictionally precluded from suing the Commissioner in federal court.

■ Section 405(h) only precludes actions "arising under" Title II of the Social Security Act, such as a § 405(g) challenge to the Commissioner's denial of disability insurance benefits, from being instituted prior to exhaustion of administrative remedies. *Heckler v. Ringer,* 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984); *Weinberger v. Salfi,* 422 U.S. 749, 764–66, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). It does not necessarily preclude an action for damages based on the Commissioner's alleged wrongful conduct in denying disability benefits. *See, e.g., Chilicky v. Schweiker,* 796 F.2d 1131, 1135 (9th Cir.1986); *Ellis v. Blum,* 643 F.2d 68, 75–76 (2d Cir.1981).

However, to the extent that the complaint seeks damages from the Commissioner in his official capacity, it is barred by the doctrine of sovereign immunity. *See United States v. Shaw,* 309 U.S. 495, 500–01, 60 S.Ct. 659, 84 L.Ed. 888 (1940); *Gilbert v. DaGrossa,* 756 F.2d 1455, 1458 (9th Cir.1985); *Hutchinson v. United States,* 677 F.2d 1322, 1327 (9th Cir. 1982); *see also Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (sovereign immunity does not bar damage actions against federal officials in their individual capacity for violation of an individual's constitutional rights); *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (same).

Accordingly, the Commissioner of Social Security's motion to dismiss on the ground of sovereign immunity should be granted

to the extent that it seeks dismissal of plaintiff's claims for money damages brought against the Commissioner in his official capacity.

## V. Eleventh Amendment Immunity.

■ The New York State Department of Labor and Workers Compensation Board move to dismiss the complaint on the ground that, pursuant to the Eleventh Amendment to the Constitution, this court lacks subject matter jurisdiction over suits for money damages brought by a citizen of the state against state agencies. The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or in equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const., amend. XI. The Supreme Court has repeatedly reaffirmed that, absent express waiver or consent by the state, or clear and unequivocal Congressional abrogation of the immunity, the Eleventh Amendment bars not only suits for money damages against states or state agencies brought in federal court by citizens of another state, but also suits against a state or its agencies brought by its own citizens. *See, e.g., Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 238–39, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985); *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 98–100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

■ As Judge Arcara held in 94–CV–339A(H), Congress did not override the Eleventh Amendment bar when it enacted 42 U.S.C. § 1981 (*see* Item 14, Ex. C, p. 4, citing cases). The same is true with respect to ERISA. *Atlantic Healthcare Benefits Trust v. Googins,* 2 F.3d 1, 4 (2d Cir.1993); *Thiokol Corp. v. Department of Treasury, State of Michigan, Revenue Division,* 987 F.2d 376, 382 (6th Cir.1993).

New York has not consented to suit in federal court against the Department of Labor or the Workers Compensation Board. Accordingly, plaintiff's suit against those defendants is barred by the Eleventh Amendment.

The motions of the New York State Department of Labor and the New York State Workers Compensation Board to dismiss the complaint should be granted on the ground of Eleventh Amendment immunity.

## VI. Motion to Set Aside Entry of Default.

■ On September 17, 1997, the Clerk of the Court entered default pursuant to Fed.R.Civ.P. 55(a) against Olean Medical Group for failure to appear or otherwise defend (Item 48). Olean Medical Group moves pursuant to Rule 55(c) to set aside the entry of default.

Rule 55(a) provides that the Clerk of the Court "shall" enter default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend ...." Rule 55(c) provides that the court may set aside an entry of default "[f]or good cause shown." Because Rule 55(c) does not define "good cause," the Second Circuit has established three criteria to be analyzed by a district court in deciding whether to set aside an entry of default: whether the default was willful, whether the moving party has presented a meritorious defense, and whether setting aside the default would prejudice the party who secured the entry of default. *Marziliano v. Heckler,* 728 F.2d 151, 156 (2d Cir.1984); *Traguth v. Zuck,* 710 F.2d 90, 94 (2d Cir.1983).

Applying these criteria to this case, I find that the entry of default by the Clerk against Olean Medical Group should be set aside. As explained in the sworn affidavit of Marylou K. Roshia, counsel for Olean Medical Group, plaintiff filed his complaint on April 10, 1997, and mailed a copy of the complaint to Olean Medical Group on or about May 27, 1997. Counsel was advised

at that time by her client that no acknowledgment of service accompanied the complaint. Thereafter, on September 30, 1997, Olean Medical Group filed a motion to dismiss the complaint on the ground of incomplete service. Meanwhile, on September 16, 1997, plaintiff filed a "Motion for Default Judgment," and on September 17, 1997, the clerk entered default. On October 3, 1997, after receiving correspondence from a codefendant's counsel advising that default had been entered against her client, Ms. Roshia spoke with the U.S. Marshals' Service who informed her that an acknowledgment of service was, in fact, served with the complaint and returned to plaintiff by an employee of Olean Medical Group (*see* Roshia Aff., Item 56).

Based on this affirmation, I find that Olean Medical Group's default was the result of miscommunication between and among its employees and its counsel, rather than willful disregard for the requirements of the Federal Rules. In addition, as demonstrated by the discussion above, Olean Medical Group (along with all other defendants) has a meritorious defense to the action. Finally, plaintiff will not be prejudiced by setting aside the entry of default, since Olean Medical Group appeared in the action prior to receiving notice of the entry of default, and moved to set aside the entry of default immediately upon receiving such notice.

Accordingly, the motion of Olean Medical Group to set aside entry of default is granted.

## VII. Sanctions.

 Defendants Hornell Local No. 1126, NYSEG, and Columbia Gas have moved for sanctions against plaintiff pursuant to Fed.R.Civ. P. 11, including an order requiring leave of court before filing any additional cases, and monetary sanctions. Such sanctions have been found to be appropriate where the *pro se* plaintiff has filed multiple actions which "have been groundless, vexatious, and an instrument of harassment . . . , [and] have also expend-

ed a considerable portion of the Court's judicial resources." *Fariello v. Campbell,* 860 F.Supp. 54, 71 (E.D.N.Y.1994); *see also In re Martin–Trigona,* 9 F.3d 226, 229 (2d Cir.1993) (citing cases); *Yosef v. Passamaquoddy Tribe,* 876 F.2d 283, 287 (2d Cir.1989) (Rule 11 applies to *pro se* litigants), *cert. denied,* 494 U.S. 1028, 110 S.Ct. 1474, 108 L.Ed.2d 611 (1990).

Upon consideration of plaintiff's claims and his demeanor during the several proceedings in which he personally appeared before the court, I find that an order requiring leave of court prior to filing additional cases or imposing any monetary sanctions on plaintiff would not be appropriate at this time. Plaintiff has adequately demonstrated his good-faith belief that he has presented the claims in this action to the best of his ability in order to obtain relief warranted by law and supported by the evidence, rather than for any improper purpose. This is all that is required by plaintiff in order to comply with the requirements of Rule 11.

Accordingly, defendants' requests for Rule 11 sanctions is denied.

## CONCLUSION

For the foregoing reasons, it is recommended that defendants' motions to dismiss (Items 5, 9, 14, 32, 42, 44, 62 & 63) be granted, and that the complaint be dismissed as to all defendants.

Also based on the foregoing, defendants' motions for a more definite statement (Items 4, 17 & 37) are denied as moot. Olean Medical Group's motion to set aside entry of default (Item 56) is granted. NYSEG's motion for sanctions (Item 38) is denied.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the

Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. *See, e.g., Paterson–Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, et al. v. Canadair Ltd., et al.,* 838 F.2d 55 (2d Cir.1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection .*

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the plaintiff and the attorneys for the defendants.

SO ORDERED.