PRECISIONFLOW TECHNOLOGIES, INC., Plaintiff–Counter–Defendant,

v.

CVD EQUIPMENT CORPORATION, Defendant–Counter–Claimant; and

Stainless Design Concepts, Ltd., Defendants.

CVD Equipment Corporation, Plaintiff,

v.

Kevin Brady and John Does I–XV, Defendants.

Nos. 99–CV–1536NAMDRH, 99–CV–2030NAMDRH.

United States District Court, N.D. New York.

Dec. 27, 2000.

**34**

Heslin & Rothenberg, P.C., Nicholas Mesiti, Lee Palmateer, Leo M. Loughlin, of counsel, Albany, NY, for PrecisionFlow Technologies, Inc. and Kevin Brady.

Galgano & Burke, Daniel P. Burke, Thomas M. Galgano, of counsel, Hauppauge, NY, DeGraff, Foy, Holt–Harris & Kunz, LLP, James T. Potter, Kelly L. Munkwitz, of counsel, Albany, NY, for CVD Equipment Corp. and Stainless Design Concepts, Ltd.

## MEMORANDUM–DECISION AND ORDER

HOMER, United States Magistrate Judge.

Presently pending is the latest in a series of contentious discovery disputes. CVD Equipment Corp. ("CVD") seeks an order imposing sanctions pursuant to Fed.R.Civ.P. 37 upon PrecisionFlow Technologies, Inc. ("PrecisionFlow") for failing to produce PrecisionFlow employees for deposition. Docket Nos. 23–25. PrecisionFlow opposes the motion. Docket Nos. 34 & 35. For the reasons which follow, CVD's motion is granted.

**1.** SDC is identified in PrecisionFlow's complaint as "Stainless Design Concepts. Ltd." Docket

## I. Background

The following facts are undisputed and constitute the findings of the Court.

CVD designs, markets and sells custom chemical vapor equipment and related computer software from its principal place of business on Long Island. Compl. (Docket No. 1), ¶ 2; Answer (Docket No. 3), ¶ 99. Stainless Design Corp. ("SDC")[1] sold semiconductor chemical delivery systems from New York State until experiencing financial difficulties in 1998. Compl., ¶ 3; Answer. ¶ 100. Kevin Brady ("Brady") was a vice-president of engineering at SDC. Answer, ¶ 108. On December 15, 1998, CVD purchased the assets of SDC, including its intellectual property and intangible assets, for $550,000. Answer, ¶¶ 103–05.

PrecisionFlow was formed in 1997 by Brady and other former SDC employees. Compl., ¶ 1; Answer, ¶¶ 106–07. Brady became the President. Answer, ¶ 111. PrecisionFlow's principal place of business was established in Saugerties, Ulster County, New York. Compl., ¶ 1. Like CVD, PrecisionFlow designs, markets and sells chemical delivery systems and related computer software and accessories. Answer, ¶ 150.

Thus, PrecisionFlow and CVD are direct competitors. PrecisionFlow is substantially comprised of individuals formerly employed by SDC, a company whose assets are wholly owned by CVD. In their complaints and counterclaims, the parties variously assert causes of action arising under the Lanham Act, 15 U.S.C. § 1125(a); the Copyright Act, 17 U.S.C. § 101 *et seq.;* and related state law. The parties allege false advertising, commercial disparagement, deceptive practices, defamation, tortious interference, defamation, unfair competition, copyright infringement and unjust enrichment. Compl., ¶ 6; Answer, ¶ 98.

On June 15 and July 11, 2000, CVD served notices upon PrecisionFlow for the depositions of nine PrecisionFlow employees. Burke Decl. (Docket No. 23), ¶¶ 3 & 5; Palmateer Decl. (Docket No. 34), Ex. A. In a

No. 1.

series of letters and telephone calls between counsel, these depositions were confirmed and rescheduled several times. Ultimately, the parties agreed to commence the depositions on October 18, 2000 at 9:30 a.m. at a motel near PrecisionFlow's offices in an order of witnesses specified by CVD. The depositions were to continue until concluded. Burke Decl., Ex. A–H.[2] CVD never explicitly stated to PrecisionFlow its expectation that PrecisionFlow would insure the attendance of its employees at the depositions. Precision-Flow never advised CVD that PrecisionFlow would not assure the attendance of its employees at the depositions or that CVD should proceed by subpoenas under Fed. R.Civ.P. 45.

The first three employees scheduled to be deposed were Lance Fischer, Ira Spiro and Partha Buragohain in that order. Palmateer Decl., ¶ 9. Brady advised these three employees of the date of their depositions, arranged for them to meet with counsel for Precision-Flow, including Lee Palmateer, Esq., and "instructed them to attend the depositions." Brady Aff. (Docket No. 34, Attach.), ¶ 4 ("I made it clear that the [PrecisionFlow] employees should fully cooperate with the litigation."); *see also* Fischer Aff. (Docket No. 34, Attach.), ¶ 3 (same); Spiro Aff. (Docket No. 34, Attach.), ¶ 2 (same); Buragohain Aff. (Docket No. 34, Attach.), ¶ 2 (same). Palmateer and another attorney met with these three witnesses at PrecisionFlow's offices on October 17, 2000 in preparation for the depositions. Unilaterally and without telling CVD, Palmateer determined that it would suffice for two employees to be present at a time rather than all nine, Palmateer Decl., ¶ 7; "instructed" Fischer and Spiro to appear for their depositions the next morning at 10:00 a.m.;[3] and instructed Buragohain to await notice at his PrecisionFlow office as to when to appear. *Id.,* ¶ 9.

On October 18, 2000, two attorneys for CVD and two CVD employees present to assist the attorneys with technical issues appeared with a stenographer prior to 9:30 a.m. Burke Decl., ¶ 10; Burke Supplemental Decl. (Docket No. 38), ¶ 5. Palmateer was also present. Palmateer Decl., ¶ 10. Shortly before 10:00 a.m., Spiro, Brady and a second attorney for PrecisionFlow appeared. *Id.,* ¶¶ 10–11. Fischer, the first scheduled witness, did not appear, apparently as the result of miscommunication between himself and Palmateer. *Compare* Palmateer Decl., ¶ 9 ("I instructed ... Mr. Fischer to show up for the deposition at 10:00 a.m.") *with* Fischer Aff., ¶ 5 ("I assumed that CVD's attorneys would depose Mr. Spiro and that [Precision-Flow's attorneys] would call me to let me know when I was needed."). Thus, only one of the nine witnesses noticed for deposition by CVD appeared without any explanation by PrecisionFlow as to the absence of the other eight.

CVD proceeded with the deposition of Spiro. However, before, during and after that deposition, CVD asked Palmateer at least six times whether the other witnesses would appear for their depositions. Burke Decl., Ex. I. Palmateer advised CVD for the first time in the three months since the deposition notices had first been served that while he believed Fischer and the other employees would appear for deposition, he did not know whether or when that would occur; PrecisionFlow was not responsible for their attendance; and CVD should have proceeded by subpoena under Rule 45 to assure their appearances. *Id.,* pp. 4–6, 36–38, 46–47.

CVD then initiated a telephone call to the undersigned. In that call, Palmateer confirmed his position that PrecisionFlow was not responsible for producing its employees for the depositions. No other explanation was offered either to CVD or to the Court. CVD was invited to move for sanctions. The deposition of Spiro was then completed at approximately 11:30 a.m. Burke Decl., Ex. I, p. 47. CVD's counsel discharged the stenog-

---

**2.** CVD moved the location of the depositions from Albany to the motel, a location approximately fifty miles closer to PrecisionFlow's offices, "in an effort to minimize the time these witnesses will be away from their jobs." Burke Decl., Ex. E.

**3.** The notices of deposition set the start of the depositions at 9:30 a.m. Palmateer Decl., Ex. A. Palmateer mistakenly advised Fischer and Spiro that the depositions were scheduled to commence at 10:00 a.m. *Id.,* ¶ 8.

rapher and departed the conference room. Burke Decl., ¶¶ 12–13.

In the meantime, Palmateer, Brady and Spiro attempted to locate Fischer and obtain his appearance. Palmateer Decl., ¶ 15. Fischer arrived at approximately 11:45 a.m. *Id.,* ¶ 16. Palmateer found the stenographer still present in the conference room and located CVD's counsel. He advised counsel that Fischer had just arrived and that the stenographer was still available. Palmateer requested to continue the depositions. *Id.* The two CVD employees who had come to the depositions to provide assistance on questions involving technical details had already departed the motel, however, and CVD declined to proceed with Fischer's deposition. Burke Supplemental Decl., ¶ 5. This motion followed.

## II. Discussion

■ Fed.R.Civ.P. 37(d) provides in pertinent part:

> If a party or an officer, director or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails (1) to appear before the officer who is to take the deposition, after being served with a proper notice, ... the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule.... In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

This rule "allows the imposition of sanctions against a party for especially serious disregard of the obligations imposed by the discovery rules even though it has not violated any court order." 8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2291, at 714 (2d ed.1994). Thus, a party served with a notice of deposition is obliged to appear at the time and place designated in the notice and, if the party fails to

do so, that party is subject to the specified sanctions. *See Lee v. Walters,* 172 F.R.D. 421, 428 (D.Or.1997) (holding that belated appearance for deposition did not preclude the imposition of sanctions for earlier failure to appear).

### A. Witnesses' Failure to Appear at Depositions

Rule 37(d) applies not only to parties but, for a corporation, to "an officer, director or managing agent ... or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a" corporation. PrecisionFlow contends that because none of the eight employees who failed to appear was an officer, director or managing agent and had not been designated as a representative of Precision-Flow for any other purpose, sanctions for their nonappearance may not be imposed against PrecisionFlow under Rule 37(d). There is no evidence presented on this motion that any of the eight employees was an officer, director or managing agent or had been designated as a representative of PrecisionFlow for any other purpose. Thus, the questions presented are whether Precision-Flow nevertheless assumed responsibility here for the appearance of its employees for their depositions and, if so, whether the employees' failure to appear subjects Precision-Flow to sanctions under Rule 37(d).

■ Whether PrecisionFlow assumed responsibility for producing its employees presents a question of fact. The undisputed facts described in the parties' pleadings establish that CVD served notices of deposition upon counsel for PrecisionFlow for each of the employees in accordance with Fed.R.Civ.P. 30(b), the dates and times of the depositions were thereafter changed on several occasions in oral and written communications between counsel, PrecisionFlow never advised CVD that it would not produce the employees for deposition, and PrecisionFlow stated its position that CVD was required to obtain the presence of the employees for deposition by subpoenas rather than notices for the first time when the employees failed to appear on October 18, 2000. Moreover, the practice in this district is that, unless otherwise stated, a

corporate party will produce its employees for deposition upon notice without the requirement of a subpoena.[4] Thus, Precision-Flow's conduct reasonably induced CVD to rely on the sufficiency of the notices of deposition for the appearances of the employees.

■ Moreover, PrecisionFlow and its counsel here exercised actual control over the eight employees. Palmateer advised Brady, PrecisionFlow's president, of the date and time of the depositions. At Brady's direction, the first three of the employees to be deposed met with Palmateer and a second PrecisionFlow attorney the prior day. Palmateer Decl., ¶ 8; Brady Aff., ¶¶ 3–4. Brady "instructed" the employees "to attend the depositions" and to "fully cooperate with the litigation." Brady Aff., ¶ 4. Palmateer "instructed" the employees to appear for the depositions the next day. Palmateer Decl., ¶ 9.[5] Thus, contrary to Palmateer's statements to CVD's counsel and the Court on October 18, PrecisionFlow and Palmateer did in fact have and exercise control over the employees. Given both the apparent and actual control over the employees, the conclusion is compelled that PrecisionFlow and its counsel assumed responsibility for the appearance of the employees for their depositions.

■ Whether this assumption of responsibility subjects PrecisionFlow or its counsel to sanctions under Rule 37(d) presents a question of law. The limited case law on this issue holds that Rule 37(d) sanctions may be imposed where a party is found responsible for the appearance of a witness for a deposition even though that witness is not an officer, director or managing agent and had been designate as a representative of the party for any other purpose. In *Flaks v. Koegel,* 504 F.2d 702 (2d Cir.1974), the plaintiff scheduled the deposition of a non-party corporation owned by the individual defendant and his wife. No corporate representative appeared for the deposition. The district court imposed sanctions upon the defendant under Rule 37(d) and he appealed. The Second Circuit held that "[i]n light of the virtual identity of interest between Koegel and [the corporation] and Koegel's position of complete control over the corporation, the failure of [the corporation] to appear at the deposition could properly be considered to be the failure of the party Koegel to appear at his deposition." *Id.* at 710 n. 6 (citations omitted).

In *In re Keystone Foods, Inc.,* 134 B.R. 828 (Bankr.W.D.Pa.1991), the defendant served a notice of deposition for a former officer of the plaintiff corporation. The witness appeared but terminated the deposition before completion. On the defendant's motion for sanctions, the plaintiff asserted that it had no control over the former officer and, therefore, could not be sanctioned for his conduct. Holding that "the crux of the matter is the fixing of the responsibility for assuring the attendance of [the witness] at the deposition...," the court found that plaintiff's counsel had assumed responsibility for the witness' appearance at the deposition, a responsibility which counsel "could have avoided ... simply by ... telling Defendant to serve a subpoena on [the witness], or advising simply that [the witness] is not under [counsel's] control. Instead, [counsel] undertook the responsibility of producing [the witness] and must bear the responsibility for his failure to appear." *Id.* at 829–30. Plaintiff was directed to pay the attorney's fees and costs incurred by the defendant. *Id.* at 830.

Thus, sanctions may be imposed upon a party or its counsel under Rule 37(d) for the

---

4. This practice serves several practical interests of a corporation. Among others, it permits a corporation to minimize disruption of its operations by negotiating the date, time and place of a deposition, and it facilitates a corporation's representation of an employee by requiring all contact regarding the deposition to be done through the corporation's counsel.

5. Indeed, Palmateer repeatedly affirms his control over the employees. *See, e.g.,* Palmateer

Decl., ¶ 7 ("Rather than having two witnesses waiting in the motel lobby for a prior deposition to end, I planned to have one witness wait in the lobby and to call the other witness at [Precision-Flow's] facilities when the prior deposition neared its end."), 9 ("I instructed Mr. Buragohain he probably wouldn't be needed until the afternoon and that we would call him by telephone if and when needed.")

nonappearance of a witness who is not an officer, director or managing agent or had been designate as a representative of a party for any other purpose if the party assumed responsibility for the appearance of the witness at the deposition. Here, PrecisionFlow assumed such responsibility for the eight employees who did not appear. Therefore, sanctions may be imposed unless "the failure was substantially justified or ... other circumstances make an award of expenses unjust." Fed.R.Civ.P. 37(d).

### B. Substantial Justification or Other Circumstances

■ PrecisionFlow contends that its failure was substantially justified because it "did everything within its power to ensure the [employees'] presence." PrecisionFlow Mem. of Law (Docket No. 35), p. 8. As described in its submissions, PrecisionFlow and Palmateer did in fact control the appearance of the employees at their depositions. However, delays and miscommunications to witnesses concerning depositions, as occurred here, are not uncommon events. Such problems are generally resolved between the parties by communication and accommodation—here, for example, by PrecisionFlow telling opposing counsel that there had been a mix-up and the witnesses would be arriving shortly. Such communication and accommodation requires a modicum of honesty, however. For reasons which remain a mystery, Palmateer was unable to muster and convey even such a minimally forthright statement of the situation, choosing instead to deny the responsibility which he and his client had assumed. As a result, a common and easily resolved problem escalated into the cessation of eight depositions with attendant unnecessary costs for both CVD and PrecisionFlow. Thus, PrecisionFlow and its counsel did not in fact do all within their power. They misled CVD and the Court about their own actions and thereby caused the depositions to end. There was no substantial justification for the conduct of PrecisionFlow or its counsel in this regard.

■ PrecisionFlow also contends that the actions of CVD constitute other circumstances militating against the imposition of sanctions. PrecisionFlow argues that CVD in fact caused the termination of the depositions when CVD refused to wait for Fischer or to resume the depositions when Fischer arrived. As to Palmateer's statements to CVD that Fischer would be arriving shortly, Fischer's deposition had been scheduled to commence at 9:30 a.m. Fischer still had not arrived as of 11:30 a.m. Moreover, Palmateer had been advising CVD since approximately 11:00 a.m. that Fischer was already on his way to the depositions from PrecisionFlow's offices fifteen minutes away. Palmateer Decl., ¶ 13. It was, therefore, reasonable for CVD to disbelieve Palmateer's statement. Finally, while Palmateer advised CVD that he "believed" Fischer would appear, Palmateer repeatedly refused to represent to CVD that Fischer, or any of the other seven employees, would appear for their depositions. In fact, by repeatedly asserting that CVD should have served subpoenas on the employees, Palmateer suggested, as CVD reasonably perceived, that the employees in fact would not be appearing. When CVD departed the conference room at 11:30 a.m., it had no sufficient reason to believe that any witnesses would in fact be appearing and had substantial reason to believe that they would not. Its decision to depart was reasonable under the circumstances, resulted from the conduct and communications of PrecisionFlow and its counsel, and does not constitute "other circumstances" precluding the imposition of sanctions.

■ Second, PrecisionFlow contends that CVD should have resumed the depositions when Fischer finally appeared at 11:45 a.m. PrecisionFlow Mem. of Law, p. 9. CVD's counsel and the stenographer were still present in the motel at that time. However, the two CVD employees who were present to assist the attorneys had already departed the motel and were not available to continue the depositions. Burke Supplemental Decl., ¶ 5 ("These CVD employees left the motel when no commitment could be made that Mr. Fischer and the other [PrecisionFlow] employees would appear."). These employees were necessary to CVD's counsel to conduct the depositions in a case where technical details may prove critical. It was not unreasonable for CVD to decline to resume the

depositions in the absence of these employees. Moreover, it would be unfair to permit PrecisionFlow by its conduct to obtain a tactical advantage in the depositions by requiring CVD to conduct the depositions without the assistance of its technical experts. Accordingly, this also does not constitute "other circumstances" precluding the imposition of sanctions.

Thus, CVD is entitled to sanctions. Because it appears that both PrecisionFlow and its counsel were responsible for the nonappearance of the employees, the sanctions will be imposed against both.

### C. Sanctions

Upon a finding that sanctions should be imposed, a court "shall" require the party, the party's attorney or both to pay "the reasonable expenses, including attorney's fees, caused by the failure" of a witness to appear at the deposition. Fed.R.Civ.P. 37(d). CVD is awarded such expenses here, including reasonable attorney's fees and costs.

### III. Conclusion

In the view of the Court and for the reasons stated above, the conduct of PrecisionFlow and its counsel on October 18, 2000 was indefensible. In accordance with the usual practice in this district, CVD served notices for the depositions of nine employees of PrecisionFlow. The depositions were confirmed on numerous occasions between counsel for the parties. On no occasion did PrecisionFlow ever object to the notices or advise CVD that it should serve subpoenas to obtain the attendance of the employees at the depositions. PrecisionFlow in fact assumed responsibility for and controlled the appearances of the employees. However, only one employee appeared for his deposition on October 18. PrecisionFlow's counsel then stated for the first time that notices of deposition were insufficient and would not be honored. The nonappearance of the eight employees could nave been resolved between the parties on October 18 if PrecisionFlow and its counsel had explained the circumstances with even a minimal degree of truthfulness. They did not, causing the depositions to be terminated at substantial expense and inconvenience to CVD as well as PrecisionFlow it-self. Rule 37(d) and fundamental fairness require that PrecisionFlow and its counsel bear the costs incurred by CVD as a result. Accordingly, it is hereby

**ORDERED** that:

1. CVD's motion for sanctions against PrecisionFlow and its counsel is GRANTED, and PrecisionFlow and its counsel, jointly and severally, shall pay to CVD the reasonable expenses incurred by CVD, including reasonable attorney's fees and costs, incurred by CVD in connection with the depositions; and

2. (a) On or before **January 12, 2001,** CVD shall file and serve an affidavit and any other necessary pleadings and documents itemizing the expenses claimed by CVD;

(b) On or before **January 26, 2001,** PrecisionFlow shall file and serve any opposition papers to CVD's claim for expenses; and

(c) No reply papers will be permitted and the matter will be taken on submission without oral argument.

**IT IS SO ORDERED.**