PRECISIONFLOW TECHNOLOGIES, INC., Plaintiff–Counter–Defendant,

v.

CVD EQUIPMENT CORPORATION, Defendant–Counter–Claimant; and

Stainless Design Concepts, Ltd., Defendants.

CVD Equipment Corporation, Plaintiff,

v.

Kevin Brady and John Does I—XV, Defendants.

No. 1:99–CV–1536(NAM/DRH).

United States District Court, N.D. New York.

April 9, 2001.

Heslin & Rothenburg, P.C., Kevin Brady, Nicholas Mesiti, Lee Palmateer, Leo M. Loughlin, of counsel, Albany, NY, for PrecisionFlow Technologies, Inc.

Galgano & Burke, Daniel P. Burke, Thomas Galgano, of counsel, Happauge, NY, for CVD Equipment Corp. and Stainless Design Concepts, Ltd.

DeGraff, Foy, Holt–Harris & Kunz, LLP, Attorneys for CVD Equipment Corp. and Stainless Design Concepts, Ltd., Albany, James T. Potter, Kelly L. Munkwitz, Of Counsel.

## MEMORANDUM–DECISION AND ORDER

MORDUE, District Judge.

## I. INTRODUCTION

The present objections by plaintiff, PrecisionFlow Technologies, Inc., ("PrecisionFlow") to a Memorandum–Decision and Order by Magistrate Judge David R. Homer dated December 27, 2000, imposing sanctions on PrecisionFlow and its counsel for failure to produce PrecisionFlow employees for deposition, arise out of a series of contentious discovery disputes between PrecisionFlow and defendant CVD Equipment Corporation ("CVD"). For the reasons stated below, the Court denies PrecisionFlow's objections, and affirms Magistrate Judge Homer's Memorandum–Decision and Order in its entirety.

## II. BACKGROUND [1]

In June and July 2000, counsel for CVD served notices upon counsel for PrecisionFlow for the depositions of nine PrecisionFlow employees. In a series of letters and telephone calls between counsel over the next few months, these depositions were confirmed and rescheduled several times. Ultimately, the depositions were commenced on October 18, 2000, just before 10:00 a.m. at a motel fifteen minutes from PrecisionFlow's facilities, and were scheduled to continue for several days until concluded.

Present at the deposition were: counsel for CVD and PrecisionFlow, two CVD employees there to provide technical guidance to CVD counsel, and the president of PrecisionFlow. Of the nine noticed PrecisionFlow employees, however, only one appeared. When counsel for CVD inquired about the eight remaining employees, Lee Palmateer, counsel for PrecisionFlow, advised counsel for CVD, for the first time, that PrecisionFlow has "no control" over the appearances of the CVD employees and that "the proper way to get these employees would have been to subpoena them." It is undisputed that the PrecisionFlow employees were fifteen minutes away at PrecisionFlow facilities, and indeed at least two were waiting for a call from Mr. Palmateer advising them to appear for the deposition.

The deposition transcripts, annexed to the decision hereto, reveal a contentious interchange between the attorneys regarding the production of the witnesses. The CVD attorney, Daniel Burke, asked at least six times, whether Mr. Palmateer, as the attorney for PrecisionFlow, was going to produce the noticed witnesses. Although Mr. Palmateer stated that he believed one additional witness was going to appear, he told CVD that he had no control over whether the remaining seven witnesses were going to appear:

Mr. Burke: Okay. We have nine deposition notices. Are you as PFT's counsel going to produce these witnesses?

Mr. Palmateer: Like I said, these are employees. These are non-parties. I can't direct them to do anything.

Mr. Burke: Are you—you're not going to answer my question?

Mr. Palmateer: That's my answer to your question. Do you have another question?

Mr. Burke: Do you know whether they're going to appear for their depositions?

Mr. Palmateer: How can I know? These are individuals.

---

1. The facts are more fully set forth in Magistrate Judge Homer's December 27, 2000,

Memorandum–Decision and Order.

Mr. Burke: We're going to call for a Magistrate. I don't know if we have a telephone.

Mr. Palmateer: Mr. Burke, let me clarify our position. Under Rule 45 if the employee is not an officer, director or a managing agent, then he's considered a non-party, and I'm bound to that rule, and I cannot speak for these individual employees and that's why I'm not speaking for these employees.

. . . . .

Mr. Burke: ... Just as far as a courtesy and as far as proceeding, we have three days of depositions scheduled. What are your plans as far as the witnesses, like, which witnesses are you going to bring?

Mr. Palmateer: Well, like I said before, I can't put a leash around their necks and bring them here.

Because Mr. Palmateer refused to confirm that any of the remaining eight noticed witnesses were going to appear, after calling Magistrate Judge Homer, and deposing the one witness who was present, counsel for CVD promptly concluded the depositions.[2]

Shortly thereafter, CVD moved for sanctions against PrecisionFlow and its

counsel pursuant to Fed.R.Civ.P. 37(d) for failure to produce the PrecisionFlow employees. In a Memorandum–Decision and Order dated December 27, 2000, Magistrate Judge Homer imposed sanctions upon PrecisionFlow and its counsel for reasonable expenses incurred by CVD, including reasonable attorneys' fees and costs in connection with the depositions. PrecisionFlow now objects to Magistrate Judge Homer's Memorandum–Decision and Order.

### III. DISCUSSION

#### A. Standard of Review

According to Rule 72(a) and the Federal Magistrates Act, 28 U.S.C. §§ 631–639, the proper standard of review is dependent upon whether the Magistrate decided a dispositive or non-dispositive issue. If a matter is dispositive, a district court will employ a *de novo* review of the Magistrate's Order. *See* 28 U.S.C.636(b)(1)(A); Fed.R.Civ.P. 72(a). If a matter is non-dispositive, a district court shall reverse a Magistrate's findings only if they are "clearly erroneous and contrary to law." 28 U.S.C.636(b)(1)(A); Fed.R.Civ.P. 72(a).

 Magistrate Judge Homer's Memorandum–Decision and Order is non-dispositive, ruling only on CVD's motion for sanctions against PrecisionFlow.[3] Accord-

---

2. PrecisionFlow avers that a second of its employees appeared at 11:45 a.m. to be deposed. PrecisionFlow asserts that counsel detained the stenographer and notified CVD counsel that the employee was there and ready to be deposed. CVD contends that it refused to re-commence the depositions because the two technical CVD employees had already left, and further, they had no assurance that any of the remaining seven PrecisionFlow would appear. PrecisionFlow argues that CVD could have called the two technical CVD employees on their cell phones and asked them to return. Even if CVD could in fact have reached the CVD technical employees, the Court still agrees with Magistrate Judge Homer that:

> When CVD departed the conference room at 11:30 a.m., it had no sufficient reason to believe that they would [produce the remaining PrecisionFlow employees]. Its decision to depart was reasonable under the circumstances, resulted from the conduct and communications of PrecisionFlow and its counsel, and does not constitute 'other circumstances' precluding the imposition of sanctions.
>
> *PrecisionFlow Technologies, Inc. v. CVD Equip. Corp.*, 198 F.R.D. 33, 38 (N.D.N.Y. 2000).

3. PrecisionFlow brought the present action under the Lanham Act, alleging among other things trademark, and copyright infringement.

ingly, this Court must review Magistrate Judge Homer's Memorandum–Decision and Order under the "clearly erroneous or contrary to law" standard of review. *Id.; see Fonseca v. Columbia Gas Systems,* 37 F.Supp.2d 214, 218 (W.D.N.Y. Sept.17, 1998). This standard affords magistrate judges broad discretion in resolving non-dispositive disputes, thus reversal is appropriate only if the discretion is abused. *See Thomas E. Hoar Inc. v. Sara Lee Corp.,* 900 F.2d 522, 525 (2d Cir.1990).

## B. *Objections*

PrecisionFlow objects to: (1) the legal standards used by the Magistrate Judge in sanctioning PrecisionFlow and its attorneys; and (2) the Magistrate Judge's recitation of the facts, as unsupported by the record. The Court will address each objection in turn.

### 1. *The Legal Standard*

█ PrecisionFlow argues that: "The Court used an incorrect two part legal standard—(a) inducement and reasonable reliance plus (b) no substantial justification or other circumstances—where the correct legal standard is (a) inducement and reasonable reliance plus (b) especially serious disregard for the discovery rules." Pl.'s Mem. of Law, p. 6. After reviewing the entire record, however, the Court finds that Magistrate Judge Homer's thorough Memorandum–Decision and Order was neither clearly erroneous nor contrary to law. Magistrate Judge Homer relied on *In re Keystone Foods,* (134 B.R. 828, 829 (Bankr.W.D.Pa. 1991)), and Fed.R.Civ.P.

37(d) [4] in extracting the legal standard applicable to the present motion.

### a. *Inducement and Reasonable Reliance*

In *Keystone Foods,* the court held that because the plaintiff and its counsel had control of a non-party witness and undertook the responsibility of producing that non-party witness for deposition, as evidenced by the correspondence between counsel, a subpoena was unnecessary, and sanctions on the plaintiff and its counsel were proper pursuant to Bankruptcy Rule 7037 and Fed.R.Civ.P. 37(d) when that witness failed to appear. *See* 134 B.R. at 830. Although PrecisionFlow contends that it did not induce CVD's reliance, it fails to object or present any legal argument to Magistrate Judge Homer's use of the *Keystone Foods,* "inducement and reasonable reliance test." Indeed, PrecisionFlow's argument is focused solely on the issue of whether it disregarded discovery rules in failing to produce its employees as demanded by CVD.

### b. *No Substantial Justification*

Fed.R.Civ.P. 37(d) states, in part, that "... the court shall require the party failing to act or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure *unless* the court finds that the failure was *substantially justified or that other circumstances make an award of expenses unjust.*" Fed.R.Civ.P. 37(d)(emphasis added). PrecisionFlow

---

4. Federal Rule of Civil Procedure 37(d) states, in relevant part:

> If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails (1) to appear before the officer who is to take the deposition, after being served with proper notice, or (2) to serve answers or objections to interroga-

> tories submitted under Rule 33, after proper service of interrogatories, or (3) to serve a written response to a request for inspection submitted under Rule 34, after proper service of the request, the court in which the action is pending on the motion may make such orders in regard to the failure as are just . . . .

> Fed.R.Civ.P. 37(d).

bases the argument that Magistrate Judge Homer applied the incorrect legal standard upon CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, which explains that Rule 37(d) "allows the imposition of sanctions against a party for especially serious disregard of the obligations imposed by the discovery rules even though it has not violated any court order." 8A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2291, at 714 (2d ed.1994). Although PrecisionFlow is correct that Magistrate Judge Homer acknowledged the treatise in the Memorandum–Decision and Order, the Court finds that Magistrate Judge Homer did not act contrary to law in applying the standard set forth in Rule 37(d), rather than the explanation in the treatise.

### c. *Application*

■ Applying the principles in *Keystone Foods*, and Fed.R.Civ.P. 37(d), Magistrate Judge Homer found that sanctions should be imposed against PrecisionFlow and its counsel because PrecisionFlow assumed responsibility for and controlled the appearances of all nine PrecisionFlow employees, but failed to produce eight of the nine for the October 18, 2000, deposition.[5] Additionally, Magistrate Judge Homer found that because PrecisionFlow's counsel advised CVD, for the first time, at the deposition that the notices of deposition were insufficient and would not be honored, PrecisionFlow caused the depositions to be terminated at "substantial expense and inconvenience to CVD as well as to PrecisionFlow itself." *PrecisionFlow Technologies, Inc. v. CVD Equip. Corp.*, 198 F.R.D. 33, 39 (N.D.N.Y. Dec.27, 2000). Magistrate Judge Homer further noted that "[t]he nonappearance of the eight employees could have been resolved between the parties on October 18 if PrecisionFlow and its counsel had explained the circumstances with even a minimal degree of truthfulness." *Id.*

PrecisionFlow argues that Magistrate Judge Homer's reliance on *Keystone Foods*, is misplaced because the non-party witness at issue in that case was a former officer, and none of the noticed PrecisionFlow employees are present or former officers, directors, or managing agents pursuant to Rule 37(d). PrecisionFlow, however, also argues that the Court can impose sanctions pursuant to Rule 37(d) "for failure of a non-subpoenaed, non-party to appear" if detrimental reliance[6] is first proven.[7] Pl.'s Mem. of Law, p. 8. PrecisionFlow's attempts to distinguish *In re Keystone*, and Rule 37(d), on the grounds that the noticed employees are not officers, directors, or managing agents, therefore, are belied by the fact that they failed to object

---

5. PrecisionFlow argues that it was under no obligation to produce the PrecisionFlow employees because they were not subpoenaed. Magistrate Judge Homer addressed this argument acknowledging that although the PrecisionFlow employees may not have been officers, directors or managing agents for whom notice is sufficient under Fed.R.Civ.P. 37(d), because the practice in this district is that a corporate party will produce its employees for deposition upon notice without the requirement of a subpoena, PrecisionFlow's conduct reasonably induced CVD to rely on the sufficiency of the notices of deposition for the appearances of the employees.

6. The Court, for purposes of this decision only, assumes detrimental reliance and inducement and reasonable reliance to have the same meaning and effect.

7. PrecisionFlow also asserts that there must also be a showing that the failure to produce the non-party, non-subpoenaed witness was in especially serious disregard for discovery rules, *see* Pl.'s Mem. of Law, p. 8, an argument, that the Court has already rejected as discussed above.

(though they had more than three months to do so) to CVD's notices of deposition, thereby inducing CVD to rely, to their detriment, on PrecisionFlow to produce the non-party, non-subpoenaed, PrecisionFlow employees. Moreover, as the correspondence between the parties illustrate, PrecisionFlow discussed the time and location of the depositions with CVD on several occasions, and even agreed that CVD should conduct the depositions fifteen minutes from Precision-Flow facilities for the convenience of the noticed employees. Finally, not only did PrecisionFlow and its counsel give CVD every reason to believe it would produce the noticed employees for the depositions, but PrecisionFlow and its counsel intended, and were indeed ready, to produce the witnesses. *See* Palmateer Decl. ¶ 4. ("PrecisionFlow and its attorneys honored the notices by preparing witnesses and otherwise preparing to attend the depositions."). Mr. Palmateer, however, refused to place a telephone call to the remaining PrecisionFlow employees to ask them to appear for deposition, or at the very least, explain to CVD that he had instructed the employees to remain at the PrecisionFlow facilities until they were needed. Thus, the Court finds that PrecisionFlow's failure to produce the PrecisionFlow employees was mean-spirited and combative in nature, and not substantially justified.

Accordingly, in this particular case, it was well within Magistrate Judge Homer's discretion to impose sanctions and appropriate the responsibility of paying the expenses CVD incurred at the October 18, 2000, depositions to PrecisionFlow and its counsel.

### 2. *Recitation of the Facts*

PrecisionFlow incorporates by reference "Palmateer 2 Declaration" and objects to the portions of Magistrate Judge Homer's recitation of the facts. In "Palmateer 2 Declaration," PrecisionFlow's attorney, Mr. Palmateer, objects to Magistrate Judge Homer's characterization of the facts, but fails to allege how any of the facts in the Memorandum–Decision and Order are clearly erroneous. Mr. Palmateer further objects to the portions of the recitation of facts "that relate to facts which were not at issue in the instant motion and which were not advocated for or against by the parties and which are unnecessary for the Court's Order." Palmateer 2 Decl. ¶ 24. Because Precision-Flow fails to allege how the facts were clearly erroneous or contrary to law, and seems only to be alleging that they were irrelevant, the Court will address this point no further.

### IV. *CONCLUSION*

The Court finds that Magistrate Judge Homer's Memorandum–Decision and Order imposing sanctions upon Precision-Flow and its counsel is neither clearly erroneous nor contrary to law, and therefore will not disturb Magistrate Judge Homer's broad discretion in resolving this particularly contentious discovery dispute. Accordingly, it is hereby

ORDERED that PrecisionFlow's objections to Magistrate Judge Homer's Memorandum–Decision and Order are DENIED in their entirety; and it is further

ORDERED that Magistrate Judge Homer's Memorandum–Decision and Order is AFFIRMED in its entirety; and it is further

ORDERED that the parties proceed in accordance with Magistrate Judge Homer's December 27, 2000, Memorandum–Decision and Order.

IT IS SO ORDERED.